UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,            )<br>                                                          )<br>                         Plaintiff,      )<br>         vs.                                        )<br>                                                          )<br>LANCE K. BRADFORD,                  )<br>                                                          )<br>                         Defendant.    )<br>_____) | Case No.: 2:19-cr-00222-GMN-BNW-1<br><br>**ORDER** |

Pending before the Court is the Government's Motion in Limine, (ECF No. 165). Defendant Lance K. Bradford ("Defendant") filed a Response,[1] (ECF No. 166), to which the Government filed a Reply, (ECF No. 186).

For the reasons discussed below, the Court **GRANTS in part** the Government's Motion in Limine.

**I.     BACKGROUND**

On September 1, 2020, a grand jury issued a Superseding Indictment charging Defendant with twenty-nine (29) counts of Aiding and Assisting in the Preparation and Presentation of False and Fraudulent Individual Income Tax Returns, in violation of 26 U.S.C. § 7206(2), and one (1) count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. (*See* Superseding Indictment 2:1–6:8, ECF No. 33). Now, the Government moves the Court to

---

[1] Defendant argues in his response that the Government's "[r]eferences to [his] lifestyle and any funds in this regard are inflammatory and highly prejudicial and inadmissible and should be excluded pursuant to Federal Rule of Evidence 403." (Resp. 4:27–28). The Court takes no position on the merits of Defendant's argument at this time. To the extent Defendant seeks to exclude such evidence, he is advised he must file his own motion in limine. *See Acosta v. Kijakazi*, No. 1:21-cv-00380, 2023 WL 2227303, at *1 n.2 (E.D. Cal. Feb. 24, 2023) ("The parties are advised that when court attention is required for any requested relief, even if the parties stipulate to the requested relief, the parties must file a motion.").

preclude Defendant from eliciting or introducing four categories of information to the jury at trial prior to a showing of admissibility. (*See generally* Motion in Limine ("MIL"), ECF No. 165). The Court discusses the Government's Motion below.

## II. LEGAL STANDARD

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Federal Rules of Evidence ("Fed. R. Evid.") 104(a). To satisfy the burden of proof under Fed. R. Evid. 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

"Although the [Fed. R. Evid.] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)). In limine rulings "are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41. Judges have broad discretion when ruling on motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). A motion in limine, however, should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine, the evidence must be inadmissible "on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

///

///

## III. DISCUSSION

The Government argues that the Court should exclude four categories of information from being presented at trial because they are "irrelevant, constitute inadmissible hearsay, will likely confuse and waste time, or all of the above." (MIL 2:11–23). These categories are: (1) "any information related to Defendant filing amended tax returns for his clients or himself after becoming aware that the IRS was likely to investigate the charged tax returns;" (2) "any information related to legal opinions or advice the Defendant solicited or received in connection with the tax returns filed in this case;" (3) "any information that [is] related to the alleged breach of law enforcement protocols, rules, or procedures during the investigation of this case or the execution of any searches conducted in connection with the investigation of this matter;" and (4) "any information that Defendant's charged conduct should be resolved civilly rather than criminally." (*Id.* 2:2–9). The Court examines each category of information in turn.

### A. Amended Tax Returns

The Government contends that the admission of Defendant's amended tax returns filed after July 2015 should be conditioned upon a showing of relevance because they are irrelevant to his mental state at the time of the charged conduct. (MIL 10:18–12:13). Additionally, the Government argues that any evidence related to these amended filings is inadmissible hearsay. (*Id.* 12:14–14:2). In response, Defendant acknowledges that while there were "accusations about unspecified illegal tax practices" at his company, LL Bradford & Company ("LLB") in July 2015, "he was not actually aware of any federal investigation into his conduct until the search warrant was executed in February 2016." (Resp. 16:8–14, ECF No. 169). According to Defendant, because he was unaware of the Government's investigation until February 2016, amended tax returns filed before that date "are probative of his lack of willfulness and good faith as to the charged offenses," and are thereby admissible. (*Id.* 18:9–12).

///

In addressing a similar tax offense, the Supreme Court has explained that "[n]o defense to a § 7201 [tax] evasion charge is made out by showing that the defendant willfully and fraudulently understated his tax liability for the year involved but intended to report the income and pay the tax at some later time." *Sansone v. United States*, 380 U.S. 343, 354 (1965). And courts have recognized that the same logic prevents defendants from relying upon remedial steps taken after learning of a government investigation, but before the filing of charges. *See United States v. Evdokimov*, 726 F. App'x 889, 896 (3d Cir. 2018); *United States v. Yagman*, No. 06-cr-227, 2007 WL 9724394, at *3 n.2 (C.D. Cal. May 17, 2007) (noting that the defendant's remedial payments "occurred after [d]efendant discovered the Government's investigation, but before he was actually indicted" but finding "[t]his factual distinction is of no consequence"); *United States v. Baras*, No. 11-cr-00523, 2014 WL 129606, at *1–*2 (N.D. Cal. Jan. 14, 2014) (finding the defendant was aware of the government investigation into his failure to pay taxes when he was "confronted by IRS Agents" and thereby excluding evidence that he offered to pay taxes he owed after he was confronted). Thus, "evidence of belated tax payments, made while awaiting prosecution, is irrelevant . . . ." *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004); *see also United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980) (finding that the subsequent intention to pay taxes is no defense to a past intention to evade taxes). Were the rule otherwise, tax evaders could avoid criminal prosecution simply by filing amended tax returns after direct or constructive notification of the government's investigation. *Pang*, 362 F.3d at 1194.

The Court agrees with the Government that once Defendant became aware of the Government's investigation, his subsequent remedial filings have minimal probative value as to his intent when the tax returns underlying the charged conduct were filed. The offense of aiding, advising, or preparing a false and fraudulent tax return is completed when the return is filed with the IRS. *See United States v. Dahlstrom*, 713 F.2d 1423, 1429 (9th Cir. 1983) (stating

the "offense of filing a fraudulent return is complete at the time of filing") (citation omitted). Courts view subsequent remedial filings with skepticism because they are often attributable to an attempt at covering up a purposeful lie in the hope of avoiding prosecution. *See, e.g.*, *United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014) ("[S]ubsequent remedial actions may not be probative of the defendant's prior state of mind because such actions are equally consistent with (1) promptly correcting a genuine mistake and (2) trying to cover up a purposeful lie in the hope of avoiding prosecution."); *United States v. Wade*, 203 Fed. App'x 920, 929 (10th Cir. 2006) ("[W]e fail to see how the attempts to settle the tax debt after the charged offenses are relevant to his conduct beforehand."). Courts within this Circuit have thereby excluded subsequent remedial filings as irrelevant and inadmissible. *See, e.g, United States v. Guirguis*, No. 17-cr-00487, 2018 WL 6059376, at *3 (D. Haw. Nov. 19, 2018) ("Caselaw in the Ninth Circuit Court of Appeals establishes that evidence of attempts to cure tax liability made after commencement of prosecution is irrelevant and inadmissible.") (citing *Pang*, 362 F.3d at 1194); *Baras*, 2014 WL 129606, at *2 ("[E]ven assuming for the sake of argument that the Defendant's conduct following the filing of the tax returns at issue has any relevancy to Defendant's intent at the time he filed the returns, the Court finds that Defendant's self-serving acts performed after the IRS confronted him have little, if any, probative value to his state of mind at the time he filed the returns."); *United States v. Jennings*, No. 10-cr-00346, 2011 WL 13143589, at *2 (C.D. Cal. Feb. 25, 2011) ("[E]vidence of Feuerborn's subsequent tax filings does not make the tax fraud charged in the Indictment less probable than it would be without the evidence."); *Yagman*, 2007 WL 9724394, at *2 ("Courts have subsequently encountered defense requests to introduce evidence of a defendant's efforts to correct prior understatements of taxes (e.g., filing an amended tax return). These arguments have been rejected . . . .") (quoting *Radtke*, 415 F.3d at 840–41)).

///

Applying the foregoing to the facts of this case, the pivotal issue is determining when Defendant received direct or constructive notification of the Government's investigation against him. The Government posits that such notification came in July 2015, (MIL 5:16–6:4), when LLB employee Dean Walker ("Walker") quit LLB due to tax reporting issues, leading to Defendant holding several partnership meetings to "address, among other items, the issues Walker raised." (Resp. 6:17–21); (*see also* 07/14/2015 Partnership Meeting Notes at 2–5, Ex. 1 to Resp., ECF No. 170). And here, Defendant does not dispute that following Walker's resignation, "there were accusations about unspecified illegal tax practices at LLB." (Resp. 16:7–9). But in determining discovery of a government investigation, courts generally rely on concrete actions demonstrating awareness, including the IRS confronting or subpoenaing the defendant. *See Yagman*, 2007 WL 9724394, at *3 n.2 (subpoena); *Baras*, 2014 WL 129606, at *1–*2 (confrontation). To be clear, accusations from employees concerning potentially illegal practices at LLB in July 2015 is sufficient to notify Defendant that corrective action was likely needed. Nonetheless, the Court is unable to find that Defendant knew or should have known that a government investigation was imminent or occurring at this time without additional facts.

The current record before the Court clearly demonstrates this type of action when the IRS and FBI agents executed the February 2016 search warrant at LLB's premises. Although a closer call, the Court also finds the record also shows Defendant knew a government investigation was imminent or occurring after Walker met with him on October 20, 2015. The Court bases this conclusion on several facts. First, at a hearing held by the Court, the Government explained that it intended to call witnesses who will testify that Walker, in the months prior to his resignation, openly complained about LLB's allegedly improper tax practices to tax partners at LLB. (Mins. Proceeding, ECF No. 195). Walker's complaints were in turn transmitted to Defendant. (*Id.*). Second, the Government disclosed it would also call an LLB employee who will testify that an IRS auditor examined an LLB client prior to July 2015.

(*Id.*). This information was again transmitted to Defendant. (*Id.*). Third, Defendant concedes he knew "there were accusations about unspecified illegal tax practices at LLB" in July 2015 following Walker's resignation. (Resp. 16:7–9). Taken together, these facts establish a foundation demonstrating that Defendant knew corrective action was needed and could support an inference of knowledge towards an occurring or imminent investigation. But here, the Court finds knowledge is more appropriately found on October 20, 2015, after considering these compounding facts with the nature of the conversation had between Walker and Defendant.

Specifically, during this October conversation, Walker stated he was called by an IRS auditor when he was employed at LLB. (October 20, 2015, Meeting at 147:10–148:24, ECF No. 170). Defendant later commented to Walker that he was prepared to "work through the IRS stuff as it comes through" and "deal with what [he] [had] to deal with." (*Id.* 168:9–11). Although the record does not show Defendant knew Walker was working with the Government at this time, the Court cannot ignore the nature of their conversation, along with the other evidence produced by the Government. (Reply 9:9–12:12, ECF No. 186); (*see also* Mins. Proceeding). Defendant directly heard from Walker that the IRS had inquired about LLB's practices, and acknowledged he was prepared to "work through" IRS related issues. In short, when the facts presented by the Government are viewed in their totality and not just in isolation, they demonstrate that Defendant was aware by the end of this meeting that a government investigation was imminent or occurring.

In sum, based on the information provided to the Court thus far, Defendant is permitted to introduce amended tax returns filed before October 20, 2015. However, the Court will revisit its ruling and exclude earlier filed amended tax returns if the

///

///

///

Government can provide evidence demonstrating Defendant was directly or constructively notified of its investigation at an earlier date.[2]

### B. Legal Advice or Opinions Related to Tax Returns

Next, the Government argues that Defendant's introduction of evidence concerning legal advice or opinions he sought after he submitted the tax returns charged in the Superseding Indictment should be excluded because they are facially irrelevant to Defendant's state of mind at the time of the alleged fraudulent. (MIL 14:3–16:19). According to Defendant, such evidence is relevant because it demonstrates his good faith and lack of willfulness.[3] (Resp. 16:1–21:16).

As with the Court's preceding analysis, a distinction can be drawn between legal advice and opinion Defendant sought before he became aware of the Government's investigation and that which he solicited afterwards. The former, assuming a proper evidentiary foundation is established, may show that Defendant was not aware of his duty under the relevant statutes at issue in this case and made a good faith effort to correct any violations. *See United States v. Kahre*, No. 2:05-cr-0121, 2007 WL 1521064, at *4 (D. Nev. May 22, 2007) ("Defendants may present a good faith defense that they lacked the *mens rea* requirement of willfulness. . . . [A]ssuming Defendants establish a proper evidentiary foundation, they may present evidence upon which they relied in establishing the fact they were not aware of their duty under the relevant statutes at issue in this case."). The latter, however, has little relevancy towards

---

[2] As to the Government's remaining hearsay argument concerning the July amended filings before Defendant learned of the Government's investigation, the Court is not persuaded that a sufficient evidentiary foundation cannot be established to admit this evidence. *See United States v. Sims*, 550 F. Supp. 3d 907, 912 (D. Nev. 2021) ("To exclude evidence on a motion in limine, the evidence must be inadmissible on all potential grounds.") (internal quotation marks omitted).

[3] Defendant also clarifies that he is not using his retention of counsel and the advice he received to "present[] the affirmative defense of 'reliance on counsel.'" (Resp. 20:14–16).

Defendant's mental state because it is equally consistent with remedial actions designed to cover up a purposeful lie in the hope of avoiding prosecution.

Accordingly, the Court will again apply October 20, 2015, as the date Defendant knew of the Government's investigation and exclude legal advice or opinions Defendant sought from his attorney after this date. The Court will permit Defendant to introduce evidence that he sought advice of counsel on how to correct his alleged violations of tax law before learning of the Government's investigation. The Court will revisit its ruling if the Government can identify evidence showing Defendant was directly or constructively notified of its investigation prior to Defendant seeking advice of counsel.

### C. Information Related to Alleged Breach of Law Enforcement Protocols and Walker Testimony

The Government also seeks to "preclude information related to the execution of the search warrant, including video footage of the search premises." (MIL 18:11–18:13). The Government maintains that Defendant aims to use this evidence to relitigate the legality or propriety of the search warrant, an issue already decided by the Court. (*Id.* 17:1–18:15). In response, Defendant maintains that he is not seeking to relitigate his Motion to Suppress but would rather seek to use this information on cross-examination for impeachment purposes. (Resp. 24:7–21). Defendant further states that if Walker is called as a witness, he "reserves the right to introduce evidence" that Walker engaged in an illegal data breach and stole private data from LLB's server" to establish bias against Defendant. (Resp. 21:25–28). The Court examines the parties' arguments in turn.

### 1. Information Related to Alleged Breach of Law Enforcement Protocols

Questions of fact and law that bear on the legality of a search or seizure are questions for courts, not juries, to decide. *Steele v. United States*, 267 U.S. 505, 510–11 (1925); *Miller v. United States*, 354 F.2d 801, 805 (8th Cir. 1966); *Burris v. United States*, 192 F.2d 253, 254-55 (5th Cir. 1951).

1    At this time, the only discernable purpose for Defendant offering evidence or argument
2    on this issue would be to cast doubt on whether those actions were lawful.  Because these legal
3    issues have already been decided by this Court, it would be improper for Defendant to raise
4    these issues before the jury. *See United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005)
5    ("Motions to suppress fall into the class of issues that are decided by the court and not the
6    jury.").  Further, even if such evidence was relevant, it would be inadmissible under Fed. R.
7    Evid. 403.  Under Rule 403, "The court may exclude relevant evidence if its probative value is
8    substantially outweighed by a danger of one or more of the following: unfair prejudice,
9    confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting
10   cumulative evidence." Fed. R. Evid. 403.  Evidence suggesting that the Government violated
11   the Defendant's rights has no minimal probative value and could mislead and confuse the jury.
12   *See, e.g, United States v. Allerheiligen*, No. 97-cr-40090, 2998 WL 918841, at *4 (D. Kan.
13   Nov. 19, 1998) (finding that allowing the defendant to introduce issues and evidence related to
14   the defendant's motion to suppress already decided by the court "would merely distract the
15   attention of the jury from the true issues within its province an would confuse the jury by
16   directing its attention to legal matters already decided by the court"); *see also United States v.
17   Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is over slight (if any) probative
18   value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair
19   prejudice or a small risk of misleading the jury.").

20   Because Defendant cannot re-litigate issues from his Motion to Suppress, he must show
21   that this evidence has some other relevance to the elements of the charged offense.  Defendant
22   has not done so, nor from his filing does it appear he intends to do so.  Defendant may cross-
23   examine any witnesses called by the Government concerning their memory or attempt to
24   properly impeach witnesses with prior inconsistent statements (if any exist), but he may not
25   seek to have the jury reconsider legal issues already decided by the Court.  Accordingly,

evidence and argument related to the legality or propriety of the search warrant is excluded. The Court is willing to reconsider its decision if Defendant is able to articulate the probative value of this evidence, but any showing must first be made outside the presence of the jury. The Court next examines whether Defendant can solicit evidence surrounding Walker's alleged data breach of the LLB server.

### 2. Testimony Surrounding the Alleged Data Breach Committed by Walker

Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense. *Washington v. Texas*, 388 U.S. 14, 19 (1967). This right is a "fundamental element of due process of law." *Id.* In that regard, the Confrontation Clause guarantees the right of an accused in a criminal prosecution to confront and cross-examine the witnesses against him. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). This right allows the defendant "to test the witness' perceptions and memory" and "to impeach, *i.e*, discredit, the witness." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). But the Confrontation Clause only "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). That is, a criminal defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *see also LaGrand*, 133 F.3d 1253, 1266 (9th Cir. 1998) (holding that there is no requirement "that a defendant must be allowed to put on any evidence he chooses").

Here, the Court has serious concerns about Defendant's proposed line of cross-examination. The Court is cognizant of Defendant's contention that excluding him from cross-examining Walker concerning the alleged data breach infringes on his right to present a defense. "This right is not, however, without limitation." *Giger v. Diaz*, No. 2:19-cv-01052, 2019 WL 5692763, at *4 (E.D. Cal. Nov. 4, 2019).

Defendant's argument is predicated on the assumption that if the Government calls Walker as a witness, he will testify as to how he obtained confidential documents from LLB which he provided to the Government. The relevance of these documents is that they are accurate filings, which the Government later independently corroborated, that show (or tend to show) Defendant committed the charged offenses. Defendant presumes that Walker will say he obtained the documents through proper means, whereas Defendant maintains that Walker obtained them by improperly hacking into the LLB server after his resignation.

Even assuming Walker hacked into LLB's servers, the significance of his testimony lies in his ability to state the underlying documents are authentic and accurate. As the Court explained in his Order denying Defendant's Motion to Suppress, under *Burdeau v. McDowell*, 256 U.S. 456 (1921), the Government is entitled to use papers incriminating an individual when those papers were volunteered by a private party who had stolen them without prompting by the Government. (Order 32:3–33:24, ECF No. 163). And in his Response, Defendant neither argues that the Government directed Walker to conduct the alleged hack nor disputes the accuracy of the documents. Instead, he focuses on the fact that Walker allegedly obtained them through improper means which is irrelevant to the accuracy and authenticity of the records. (*See generally* Resp.).

While impeachment on this basis would go towards Walker's truthfulness, it will also undoubtedly confuse the issues, mislead the jury, cause undue delay, and have limited relevance to the charged conduct. *See* Fed. R. Evid. 403. First, Walker is not on trial. A prolonged foray into whether Walker hacked into LLB servers has minimal value unless Defendant can show that the documents Walker provided the Government were altered or not authentic. Second, examination of this issue obfuscates the purpose of the trial: whether *Defendant* committed the charged offenses. Third, this topic may cause the jurors to infer that the Government impermissibly relied on the documents provided by Walker. *See United States*

*v. Kleinman*, 859 F.3d 825, 835 (9th Cir. 2017) (explaining that trial courts have a "duty to forestall or prevent [nullification].") (quoting *Merced v. McGrath*, 426 F.3d 1076, 1079 (9th Cir. 2005)).  The Court already determined that the Government was entitled to use documents provided by Walker because there is no evidence the Government directed any unauthorized entry into LLB servers. (Order 32:3–33:24).  Defendant cannot relitigate his Motion to Suppress during trial, and evidence suggesting that the Government violated his rights has minimal probative value and could mislead and confuse the jury. *See United States v. Hitt*, 981 F.2d at 424.

Neither the Confrontation Clause nor the right to present a defense grants a defendant the unfettered right to cross-examine a witness on lines of inquiry that are marginally relevant or inadmissible. *Cf. Montana v. Egelhoff*, 518 U.S. 37, 42–43 (1996); *see also Doughton v. Foulk*, 584 F. App'x 842, 842 (9th Cir. 2014) (rejecting claim that the trial court's exclusion of impeachment evidence against a prosecution witness violated his Sixth Amendment confrontation rights because "[t]he Supreme Court has never held that the Confrontation Clause entitles a defendant to introduce *extrinsic evidence* for impeachment purposes") (citation omitted).  Based on the current record before the Court, information concerning the alleged data breach has only marginal relevance and implicates many of the bases for exclusion enumerated in Fed. R. Evid. 403.  Accordingly, it may be excluded.  The Court is willing to reconsider its decision if Defendant can sufficiently articulate the probative value of this information as compared to the potential issues identified by the Court.

**D. Information that Defendant's Charged Conduct Could be Resolved in a Civil Suit**

The Government avers that any argument to the effect that this case should be "resolved civilly as opposed to criminally" improperly invites jury nullification, is irrelevant in a criminal trial, creates a substantial risk of misleading the jury, and prejudices the Government. (MIL 3:7–12; 18:17–19:9).  The Government maintains that if Defendant seeks to advance this

argument, he should first be required to "demonstrate [its admissibility] outside the presence of the jury beforehand." (*Id.* 19:9–11). In response, Defendant represents that he is "not seeking to introduce evidence at trial about how this matter should have been resolved civilly as opposed through the criminal justice system" but "reserves the right to question Government witnesses . . . during cross examination about how the processes involved in tax investigations, including audits" are relevant to the charged offenses (Resp. 24:23–26).

Trial courts have a "duty to forestall or prevent [nullification]." *Kleinman*, 859 F.3d at 835 (quoting *Merced*, 426 F.3d at 1079). It is well-established that "it is the duty of juries in criminal cases to take the law from the court and apply the law to the facts as they find them to be from the evidence." *Merced*, 426 F.3d at 1079 (quoting *Sparf v. United States*, 156 U.S. 51, 103 (1893)). Although juries have the power to engage in nullification, that is, to "acquit 'in the teeth of both law and facts,'" they have no right to do so. *Id.* (quoting *Horning v. District of Columbia*, 254 U.S. 135, 138 (1920)); *see also United States v. Blixt*, 548 F.3d 882, 890 (9th Cir. 2008) (finding the district court properly instructed jury to disregard counsel's "blatant jury nullification arguments").

Based upon this principle, courts have repeatedly rejected criminal defendants' attempts to introduce evidence, or to obtain jury instructions indicating, that the Government could have pursued the defendants through civil means, rather than through criminal prosecution. For example, in *United States v. Buras*, a defendant charged with tax crimes sought an instruction that the Government could "avail itself of the civil remedy of assessing Buras' taxes without filing civil charges." 633 F.2d 1356, 1360 (9th Cir. 1980). The district court refused, and the Ninth Circuit affirmed noting that, because "the availability of a civil remedy is irrelevant to the issue of criminal liability, the court correctly refused to give such an instruction. Such an instruction would serve only to confuse the jury." *Id.* (citations omitted); *see also United States v. Merrick*, 464 F.2d 1087, 1093 (10th Cir. 1972) ("see[ing] no relevance in such an

instruction"); *United States v. Sinagra*, 584 Fed. App'x 628 (9th Cir. 2014) (affirming refusal to give instruction); *United States v. Burkhart*, 501 F.2d 993, 996 (6th Cir. 1974) ("The matter of civil liability is not an issue when a jury is determining a defendant's criminal liability for tax evasion.").

Similarly, in *United States v. DeMuro*, the defendants charged with tax crimes sought to introduce evidence concerning the breakdown of negotiations with the IRS related to a possible civil resolution of their tax liability. 677 F.3d 550, 565 (3d Cir. 2012). The district court excluded the evidence, finding that it "opened the door to jury nullification, by inviting the jury to reason that the IRS should have continued to pursue the matter civilly rather than criminally." *Id.* The Third Circuit affirmed the finding that the risk of jury nullification outweighed any probative value of the evidence at issue. *See id.*

Evidence concerning civil tax remedies is entirely irrelevant to the question of whether the Government established each of the elements of the tax crimes and conspiracy count with which Defendant is charged. *See* Fed. R. Evid. 401 (noting that evidence is relevant if "it has any tendency to make a fact more or less probable . . . and the fact is of consequence"); *see also Buras*, 633 F.2d 1360 (explaining that "the availability of a civil remedy is irrelevant to the issue of criminal liability"). And here, Defendant has not articulated the relevance of "the processes involved in [civil] tax investigations, including audits" to his criminal case. (Resp. 24:25–26). Further, introduction of such evidence "would serve only to the confuse the jury." *Buras*, 633 F.2d at 1360; *see also United States v. Plitz*, 17-cr-0053, 2022 WL 14763150, at *7 (E.D.N.Y. Oct. 25, 2022) (excluding the defendant from suggesting that the case should have been handled through administrative or civil proceedings rather than criminal prosecution). Accordingly, Defendant cannot present evidence or argument about civil tax remedies. The Court may reconsider its decision if Defendant can sufficiently articulate the probative value of civil procedures and remedies.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Government's Motion in Limine, (ECF No. 165), is **GRANTED in part** to the extent consistent with this Order.

**DATED** this __12__ day of October, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court